NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11794
SJC-11932


COMMONWEALTH  vs.  ESAU DePINA.
COMMONWEALTH  vs.  ISAIAH MONTEIRO.


Plymouth.    November 10, 2016. - March 13, 2017.

Present:  Gants, C.J., Lenk, Hines, & Lowy, JJ.


Homicide.  Firearms.  Evidence, Testimony before grand jury,
     Hearsay, Admission by silence, Statement of codefendant,
     Joint venturer, Prior misconduct, Immunized witness, Third-
     party culprit, Expert opinion.  Constitutional Law,
     Confrontation of witnesses.  Joint Enterprise.  Practice,
     Criminal, Capital case, Confrontation of witnesses,
     Hearsay, Conduct of prosecutor, Opening statement,
     Instructions to jury, Severance, Trial of defendants
     together.



     Indictments found and returned in the Superior Court
Department on November 10, 2010.

     The cases were tried before Richard J. Chin, J.


     Rosemary Curran Scapicchio for Esau DePina.
     Stephen Neyman for Isaiah Monteiro.
     Audrey Anderson, Assistant District Attorney, for the
Commonwealth.

LENK, J.  After a jury trial in the Superior Court, the defendants, Isaiah Monteiro and Esau DePina, were each found guilty of murder in the first degree on a theory of deliberate premeditation, as well as of related offenses, in the shooting death of the victim, Anthony Hamilton, on November 16, 2009.[1]  In this direct appeal, they challenge the substantive admission of a witness's grand jury testimony, various statements in that testimony they claim are independently inadmissible, certain portions of the prosecutor's opening statement, the jury instructions on immunized witness testimony, and the denial of their motions to sever; they also raise various evidentiary issues.  In addition, both defendants seek relief under G. L. c. 278, § 33E.  We discern no error warranting reversal, and, having carefully reviewed the record, see no reason to reduce or set aside the verdicts under G. L. c. 278, § 33E.  Accordingly, we affirm the defendants' convictions.

1.  <u>Background and proceedings</u>.  a.  <u>Facts</u>.  We recite the facts that the jury could have found, reserving certain details for later discussion.  On November 16, 2009, at approximately

_____

[1] Esau DePina also was convicted of four charges of armed assault with the intent to murder, unlawful possession of a firearm, unlawful possession of ammunition without a firearm identification card, and discharge of a firearm within 500 feet of a building.  Isaiah Monteiro also was convicted of unlawful possession of a firearm and unlawful possession of ammunition, and acquitted of four charges of assault with intent to murder and one charge of discharging a firearm within 500 feet of a building.

1 P.M., the victim was with several of his friends on the front porch of a house on Johnson Court in Brockton.  A man approached on foot and shot him.  Witnesses near the scene -- neighbors, a carpenter, and the driver of a passing vehicle -- described hearing at least three gunshots and seeing a man running, climbing through a hole in a fence, and getting into a waiting vehicle.  None of the witnesses was able to provide more than a general description of that individual, whom most described as a relatively dark-skinned male in a gray hooded sweatshirt.

No bullets were recovered from the victim's body, but fifteen cartridges, eight spent shells, and three lead fragments were found at the scene.  A State police ballistics expert determined that all of the shots were fired by the same gun, likely a .40 caliber semiautomatic pistol, but were unable to identify a specific weapon or manufacturer.  Forensic examiners also took cast impressions of four partial footprints found near the location where the fleeing man had climbed through a fence, but investigators were unable to determine the precise size or brand of the shoe that made the impression.

With few leads, there was little progress in the investigation for several months.  In the summer of 2010, police spoke with Licea DaSilva, Monteiro's girl friend at the time of the shooting.  Police also spoke with Kevin Dossanto, Monteiro's cousin.  From their statements, police learned that Monteiro had

been "jumped" by the victim and the victim's brother some time before the shooting.  They also learned that Monteiro and DePina had spent the weekend before the shooting at a hotel in Brockton, with DaSilva and others.  DaSilva, who had been consuming alcohol and drugs, saw Monteiro with a handgun and "shells" in the room.

On the following Monday morning, Monteiro and DaSilva drove to the school she attended.  DaSilva gave Monteiro permission to use her vehicle for the rest of the day, and asked him to bring her lunch.  Dossanto later went with Monteiro to the hotel and to deliver lunch to DaSilva.  En route, they picked up DePina. When they dropped her lunch off at school, DaSilva noticed that DePina was wearing a gray hooded sweatshirt, which she thought was strange given the weather.  The three men then continued "joy riding" around Brockton, while listening to music and smoking marijuana.

At some point, Dossanto noticed that they had entered the north side of Brockton.  This was a part of the city they generally avoided because of a "beef" between residents who grew up on the north side and those, like Dossanto, Monteiro, and DePina, who grew up on the south side.  When Dossanto asked why they were on the north side, Monteiro told him not to worry about it.

As they were driving near Johnson Court, Monteiro pointed out a group of people standing on the street. After passing Johnson Court, Monteiro pulled over and DePina got out of the vehicle. Less than one minute later, Dossanto heard multiple gunshots. DePina returned to the vehicle almost immediately thereafter and said, "I think I got him." Monteiro said "are you sure" or "all right." DePina replied that they had "to get the hell out" of the area, and Monteiro drove to a mutual friend's house. When Dossanto asked what had happened, Monteiro replied that "shit popped off," which Dossanto understood to mean that someone had been shot. When he attempted to ask more about it, Monteiro told him to "[s]top acting like a bitch."

Later that day, Monteiro and DePina returned to pick up DaSilva at her school. Soon after getting into the vehicle, DaSilva received a telephone call from her sister, Anita Rodriguez, telling her of the shooting and the victim's death,[2] and asking to be picked up at their house near Johnson Court. DePina and Monteiro said that they did not want to go to the north side of town, and particularly did not want to go near Johnson Court because they had a "beef" with people in that area, but ultimately did go with DaSilva to get her sister. At her sister's urging, DaSilva then drove past the scene of the

---

[2] DaSilva, who was from the north side of Brockton, and the victim were friends.

shooting. The defendants appeared nervous and DaSilva's sister asked them, "[I]f you didn't do it, what's the big deal?," to which neither responded.[3]

b. _Pretrial proceedings_. Prior to trial, the defendants filed a number of motions concerning the anticipated evidence at trial. While some were allowed, many were denied. Among those denied were motions to sever, to exclude testimony that DaSilva had seen Monteiro with a gun the weekend before the shooting, to introduce testimony concerning a violent altercation between the victim and an unknown individual shortly before his death, and to admit testimony from an individual who had been planning to purchase heroin from the victim later on the day he was killed.

After the jury were empanelled but before opening statements, DaSilva, whom the Commonwealth had summonsed to testify, asserted her right to remain silent under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Appointed counsel maintained, among other things, that inconsistencies between DaSilva's grand jury testimony and the testimony she intended to give at trial would expose her to perjury charges. The judge held an in camera hearing on the validity of this claim (_Martin_ hearing). See _Commonwealth_ v. _Martin_, 423 Mass. 496, 504

---

[3] It was not clear whether Rodriguez's question was directed at one or both of the defendants.

(1996). At the hearing, DaSilva spoke freely; among other things, she mentioned her fear of testifying, and she claimed that police coerced her into falsely telling the grand jury that she had seen Monteiro with a gun the weekend before the killing. On this basis, the judge determined that DaSilva had asserted a valid claim under the Fifth Amendment as, were she to testify to the contrary, she "necessarily" would admit to perjury. The Commonwealth then obtained a grant of immunity and an order that DaSilva testify at trial. Thereafter, and before opening statements were made, DaSilva's counsel said that she was willing to do so.

c. Proceedings at trial. The prosecutor's opening statement focused largely on the evidence that DaSilva and Dossanto had provided to the grand jury and to which it was expected they would testify at trial. In addition to key testimony from the two, one of whom proved to be uncooperative, a series of witnesses testified to hearing gun shots and seeing a man running, climbing through a fence, and entering a vehicle around the time of the shooting. Investigating officers testified to their efforts to obtain and examine physical evidence, largely consisting of the inconclusive cartridges, shells, and footprints.

Dossanto was the primary source of information concerning the events on the day of the shooting. Among other things, he

testified that he had been in the vehicle with Monteiro and DePina on that day, with Monteiro driving and DePina a passenger. The group drove around town, eventually arriving at Johnson Court, where Monteiro pointed out a group of people, and parked the vehicle. DePina got out and disappeared from view, and Dossanto then heard several gunshots. DePina returned immediately thereafter, got into the vehicle, and told Monteiro to leave the scene. As they were driving away, Monteiro told Dossanto that "shit popped off."

On direct examination, Dossanto acknowledged that he had not come forward earlier with this information because he feared retaliation if he cooperated with police. On cross-examination, Dossanto conceded that he did not speak to police until they approached him nine months after the shooting, and told him that he was a "person of interest" in the investigation. He initially told police that he had "nothing to do with" the shooting, and that he did not know DaSilva. After police told him that they knew he had been with Monteiro and DePina that day, and that he had "better start talking" to avoid being sent to prison, however, he implicated Monteiro and DePina by "fill[ing] in the blanks" for the police interviewers.

During the first day of DaSilva's testimony, she stated, as she had at the Martin hearing, that her testimony before the grand jury had been coerced, and asserted multiple times that

she did not remember events to which she had testified at the grand jury.[4] The judge conducted a voir dire examination to ascertain whether, pursuant to Commonwealth v. Daye, 393 Mass. 55 (1984), overruled on another ground by Commonwealth v. Cong Duc Le, 444 Mass. 431 (2005), and its progeny, DaSilva's grand jury testimony was admissible substantively. During that examination, DaSilva continued to maintain that she did not have an independent memory of certain events, alluding to a learning disability that affected her abilities in this regard. The examination ended with DaSilva running out of the court room. The judge continued the trial until the following day, ordered DaSilva held overnight in custody, and found her in contempt. Her attorney informed the judge the following morning that, prior to testifying the preceding day, DaSilva had been threatened in the hallway, but nonetheless would be willing to testify. When direct examination resumed, however, she continued to maintain that she could not remember most of the events on the weekend prior to, and the day of, the shooting.

This led to a second voir dire examination at which DaSilva continued to claim that she was unable to remember certain events, and that her statements before the grand jury had been

---

[4] The jury heard that DaSilva had received immunity for her testimony, although they were not told when she was given that immunity. During the judge's final charge, they were told that they could consider the grant of immunity in weighing her credibility.

coerced.  On cross-examination by defense counsel, she was able to recount considerably more information than on direct examination by the Commonwealth.  Discrediting DaSilva's memory loss as feigned, the judge allowed portions of her grand jury testimony to be admitted substantively, on "a question by question basis."

2.  Discussion.  The defendants raise several claims of error on appeal.  They challenge the substantive admission of DaSilva's grand jury testimony on both evidentiary and constitutional grounds, and also claim that such testimony contained several independently inadmissible portions.  They assert error as well in six further respects:  (a) the prosecutor's opening statement; (b) the judge's instructions concerning immunized witness testimony; (c) the denial of a motion to sever; (d) the partial denial of a motion to introduce third-party culprit evidence; (e) the testimony of a ballistics expert; and (f) Dossanto's testimony as to his fear of testifying.  Both defendants also seek relief under G. L. c. 278, § 33E.

a.  Admission of DaSilva's grand jury testimony.  The defendants claim that the admission of DaSilva's grand jury testimony as substantive evidence, to which they objected at trial, was error.  In light of the paucity of physical evidence and the Commonwealth's resulting reliance on DaSilva's

testimony, as well as that of Dossanto, the defendants maintain that this was prejudicial error warranting a new trial.

The defendants suggest two reasons why admission of the grand jury testimony was error. First, both maintain that the judge's findings were inadequate to satisfy the prerequisites for admissibility of grand jury testimony as set forth in Daye, 393 Mass. at 73-74, and Commonwealth v. Sineiro, 432 Mass. 735, 745 & n.12 (2000). Specifically, they claim that the judge failed to make necessary findings that DaSilva's testimony was not coerced. Second, Monteiro argues that the admission of such testimony was in violation of the confrontation clause of the Sixth Amendment to the United States Constitution. After considering each of these contentions, we turn to the defendants' argument that, even if not erroneously admitted on these grounds, four specific portions of the testimony should have been excluded on evidentiary grounds.

i. Prerequisites for substantive admission of grand jury testimony. When a witness, who is on the stand and therefore available for cross-examination, testifies to a lack of memory, his or her previous testimony before the grand jury may be admitted substantively if the judge determines that three conditions have been met. The judge must find, first, that the witness is in fact feigning his or her lack of memory; second, that the grand jury testimony was not coerced; and, third, that

the grand jury testimony was in the witness's own words, involving more than mere confirmations or denials of statements made by the interrogator.[5]  See Commonwealth v. Maldonado, 466 Mass. 742, 754-755, cert. denied, 134 S. Ct. 2312 (2014), citing Sineiro, 432 Mass. at 745 & n.12, and Daye, 393 Mass. at 75.  A trial judge's findings on these issues are entitled to substantial deference and are "conclusive as long as . . . supported by the evidence."  Maldonado, supra at 756, quoting Sineiro, supra at 742 n.6.

In this case, the judge's determination that DaSilva's statement to the grand jury met the requirements to be admitted substantively is "supported by the evidence."  Maldonado, supra, quoting Sineiro, supra.  As to the first prerequisite, feigned memory loss, there is little question that the evidence amply supports the judge's finding.  The judge noted that, at the Martin hearing, DaSilva had remembered relevant events and similarly could recount events when asked about them during the voir dire examination by defense counsel.  He noted also that

---

[5] In Commonwealth v. Daye, 393 Mass. 55, 75 (1984), overruled on other grounds by Commonwealth v. Cong Duc Le, 444 Mass. 431 (2005), we identified an additional requirement: where grand jury testimony relates to an essential element of the offense, the Commonwealth must offer corroborative evidence, in addition to that testimony, in order to sustain a conviction. While we have sometimes called this a fourth prerequisite, in fact the requirement goes to the sufficiency of the evidence rather than to its admissibility.  See Commonwealth v. Clements, 436 Mass. 190, 193 (2002).

DaSilva had indicated her desire not to get "involved," and had reasons that might cause her to feign memory loss.[6]

As to the second prerequisite, the judge did not expressly find that DaSilva's grand jury testimony was not coerced, nor was he requested to do so. Although an express finding is, of course, to be preferred, it is not essential where the evidence supports the judge's implicit finding that DaSilva had not been coerced.[7] See Maldonado, 466 Mass. at 756. Where, as here, a judge demonstrates familiarity with the requirements for the substantive admission of grand jury testimony based on a feigned loss of memory, the admission of the testimony implies a factual finding that it was not coerced. See id. This comports with the general principle that a judge's ruling on an ultimate issue implies resolution of subsidiary factual issues in favor of the prevailing party. See Commonwealth v. Grandison, 433 Mass. 135, 137 (2001), and cases cited; Commonwealth v. Lanoue, 392 Mass.

---

[6] At the first voir dire, the judge commented, "I have observed her in-camera. She doesn't have a problem with memory. You can see from the transcript, she specifically gave me reasons why she didn't want to testify. She is up here and even when I am questioning her, she thinks this is a game."

[7] During oral argument before us, counsel for DePina urged that, where, as here, a witness's claim of coercion was uncontroverted, the judge must make a specific finding that he or she does not credit that claim in order to make a finding that there was no coercion. We decline to adopt this suggestion.

583, 588 (1984), S.C., 400 Mass. 1007 (1987) and 409 Mass. 1 (1990).

The judge had observed DaSilva over two days, having conducted both a Martin hearing and two voir dire examinations. While, at the time of the judge's ruling, DaSilva's consistent claim of police coercion had not been controverted,[8] the judge was nonetheless not required to credit it. Cf. Maldonado, 466 Mass. at 756 (judge entitled not to credit claim of coercion). He had found DaSilva generally not credible, and already had determined that her claimed lack of memory was a sham, observing that she "thinks this [trial] is a game," and noting that she did not have the same loss of memory when responding to defense counsel or when testifying in camera. The final Daye-Sineiro requirement was met by DaSilva's testimony, in her own words, before the grand jury; she plainly did far more than confirm or deny the prosecutor's questions. See id. The defendants do not argue otherwise.

ii. Confrontation clause. Monteiro claims that, due to DaSilva's asserted lack of memory, he was unable to cross-examine her on the substance of her testimony, in violation of the confrontation clause. This claim is without merit.

---

[8] The prosecutor later presented evidence from police officers denying any coercion of DaSilva.

Where a witness testifies at trial and is cross-examined, any limitation on the effectiveness or substance of that cross-examination stemming from feigned memory loss generally does not implicate the confrontation clause. See, e.g., Commonwealth v. Figueroa, 451 Mass. 566, 576 (2008). See also Cong Duc Le, 444 Mass. at 437-438, citing United States v. Owens, 484 U.S. 554, 561 (1988) (lack of "substantive content of a witness's answers does not mean that the defense has been deprived of the opportunity to confront"). But see Commonwealth v. Stewart, 454 Mass. 527, 533 (2009) (reaffirming holding in Daye that total loss of memory preventing effective cross-examination may preclude admission of grand jury testimony at trial).

Here, DaSilva was available for cross-examination at trial. Defense counsel was able to conduct, and did conduct, an effective cross-examination. DaSilva recanted her grand jury testimony incriminating the defendants, and acknowledged some memory of the period in question. She testified to using alcohol and drugs the weekend prior to the killing and to being brought food by the defendants that day. She explicitly denied any memory of bad blood between Monteiro and the victim, any memory of seeing Monteiro at the hotel with a gun on the weekend prior to the shooting, and any memory of DePina wearing a gray sweatshirt on the day of the shooting. Cf. Daye, 393 Mass. at 71 n.15 (cross-examination "could hardly hope to accomplish

more" than to convince witness to tell different, non-incriminating story [citation omitted]).

iii. <u>Independently inadmissible portions of grand jury testimony</u>. Both defendants contend that even if the grand jury testimony was properly admitted, four specific portions should have been excluded.

A. <u>"Totem pole" hearsay</u>. The defendants argue that two statements made by DaSilva's sister, Rodriguez, and introduced through DaSilva's grand jury testimony, should have been excluded as "totem pole" hearsay. Totem pole hearsay is admissible only if each of the multiple hearsay statements falls within an exception to the hearsay rule. See, e.g., <u>Commonwealth</u> v. <u>Gil</u>, 393 Mass. 204, 218 (1984); Mass. G. Evid. § 805 (2016). We agree that at least one statement ought not to have been admitted, but the error does not require a new trial.

The first challenged statement -- DaSilva's testimony to the grand jury that Rodriguez said the defendants appeared nervous -- constituted hearsay not within any exception. Before the grand jury, DaSilva testified that DePina and Monteiro acted nervously: they "didn't want to go" back toward Johnson Court, they "were mad," and their reaction was "unusual." She further testified, "My sister had noticed it, too, and said, 'Do they have something to do with it?' Because my sister was like, 'oh, they're acting really nervous.'" As neither defendant objected

to this particular statement at trial, we review only to determine whether its admission caused a substantial likelihood of a miscarriage of justice. See, e.g., Commonwealth v. Stewart, 450 Mass. 25, 37 (2007). Because the statement was cumulative of other, properly admitted evidence, namely DaSilva's own observations of the defendants' demeanor, we conclude that it did not. See Commonwealth v. Spray, 467 Mass. 456, 471 (2014) (cumulative hearsay does not create substantial likelihood of miscarriage of justice); Commonwealth v. Britt, 465 Mass. 87, 92 (2013) (no substantial likelihood of miscarriage of justice where "jury could have inferred" same fact from properly admitted evidence).

In the second challenged statement, DaSilva related in her grand jury testimony, later admitted at trial, that Rodriguez asked DePina and Monteiro, "Well, if you didn't do it, what's the big deal?" and that neither responded. DePina contends that this, too, is totem pole hearsay. The judge allowed the question to come in as an adoptive admission by silence. Because Monteiro objected,[9] we review to determine whether the error, if any, prejudiced the defendants. See Commonwealth v. Martinez, 431 Mass. 168, 176 n.7 (2000). An error is

---

[9] Monteiro's objection put the judge on notice, and thus served the purpose of the requirement of a contemporaneous objection. Although DePina did not object at trial, we treat the issue as preserved for both defendants. See Commonwealth v. Charles, 57 Mass. App. Ct. 595, 598 n.7 (2003).

prejudicial if we "cannot find 'with fair assurance'" that it did not "substantially sway[]" the verdict (citation omitted). Commonwealth v. Canty, 466 Mass. 535, 545 (2013).

Although the statement was not directed explicitly at either defendant, arguably one or both defendants might have been expected to deny what could have been perceived as an accusation.  In that event, the testimony properly could have been admitted as an adoptive admission.  See Commonwealth v. Olszewski, 416 Mass. 707, 719 (1993), cert. denied, 513 U.S. 835 (1994).  We have cautioned, however, against the use of adoptive admissions by silence, because the lack of response may be due to "inattention or perplexity" rather than acknowledgment of guilt.  See Commonwealth v. Babbitt, 430 Mass. 700, 705 (2000). Assuming, for the sake of argument, that admission of Rodriguez's remark was error, we discern little, if any, impact on the verdicts.  The jury were presented with far more direct evidence of the defendants' guilt through Dossanto, as well as through DaSilva's own statements, and the prosecutor did not mention Rodriguez's statement in her closing argument.

B.  Statements by nontestifying codefendant.  DePina challenges the admissibility of two statements he ascribes to Monteiro that were introduced as part of DaSilva's grand jury testimony.  Because there was no objection at trial, we review any errors to determine whether they give rise to a substantial

likelihood of a miscarriage of justice.  See Commonwealth v. Taylor, 455 Mass. 372, 381 (2009).  DaSilva testified that, before the killing, Monteiro said that he had been jumped by the victim and the victim's brother.  She also testified that, after the shooting, one of the defendants mentioned that he did not want to drive past Johnson Court because of a "beef" with people there.  DePina contends that these statements were hearsay and admitted improperly against him.

The first statement as to Monteiro previously having been jumped by the victim, while relevant to Monteiro's motive and admissible against him, should not have been admitted against DePina.  A limiting instruction was neither requested nor given.  Nonetheless, the error did not give rise to a substantial likelihood of a miscarriage of justice, as the improper testimony added little to the case against DePina.  DaSilva's testimony on this point was limited to one statement, and, in closing, the prosecutor mentioned DaSilva's statement in passing as a possible motive for the shooting, while focusing extensively on the "beef" between the north and south sides of Brockton.

The second statement was admitted properly as a statement of a joint venturer.  A hearsay statement by one codefendant is admissible against another, absent testimony by the codefendant, if there is independent evidence of the existence of a joint

venture and the statement was made during and in furtherance of that joint venture. See, e.g., Commonwealth v. Carriere, 470 Mass. 1, 8 (2014). DePina concedes that, here, there was independent evidence of the joint venture. Statements made to conceal a joint venture are considered to be in furtherance of the joint venture and, therefore, are admissible against all of the joint venturers. See Commonwealth v. Angiulo, 415 Mass. 502, 519 (1993). See also, e.g., Commonwealth v. Marrero, 436 Mass. 488, 494 (2002) (statements made "only a few hours after the crimes" and while defendants were together were part of joint venture). On this record, a reasonable judge could have decided that the second statement, regarding a desire to avoid Johnson Court, reflected a fear of being caught near the scene of the crime, and thus was a continuing effort to conceal the joint venture. There was no error in the admission of this statement.

C. Portions of grand jury testimony as to which DaSilva had not claimed lack of memory. DePina argues that on at least one occasion, the prosecutor strayed, without specific objection, from the judge's instruction that grand jury testimony be introduced on a "question-by-question" basis, and that it only be admitted where DaSilva specifically denied memory of a topic. DePina claims the failure to follow the judge's instruction created a substantial likelihood of a

miscarriage of justice by introducing evidence as to which DaSilva had not feigned memory loss.  See Sineiro, 432 Mass. at 743-744.

In fact, the prosecutor did follow the judge's question-by-question order.  DaSilva testified on direct examination that she could not remember whether anyone other than Monteiro was in her vehicle on the day of the shooting.  In response, the prosecutor introduced her statements to the grand jury discussing who had been in the vehicle, as well as what they were wearing, what they were discussing, and how they were acting.  The grand jury testimony that was admitted simply provided a complete answer to the question DaSilva was unwilling to answer on the stand; she could not have been expected to remember the clothing, conversations, and behavior of people whom she claimed not to remember at all.  There was no error.

D.  Prior bad act evidence.  Monteiro filed a motion before trial to exclude references to his possession of a gun on the weekend before the shooting.[10]  He contends that the judge abused his discretion in denying the motion.

Evidence of a defendant's possession of a gun may be admissible to show that he or she had the means to commit the

_____

[10] At that point, Monteiro expected the prosecutor to introduce evidence of gun possession through DaSilva's live testimony; it ultimately was introduced through her grand jury testimony.

offense.  See Commonwealth v. Corliss, 470 Mass. 443, 450 (2015).  The Commonwealth generally may not introduce evidence of a gun, however, where the gun "definitively could not have been used in the commission of the crime."  Commonwealth v. Barbosa, 463 Mass. 116, 122 (2012) (excluding weapons of different caliber).  In this case, DaSilva testified before the grand jury that Monteiro had a handgun in his possession on the weekend before the shooting.  After some prompting, DaSilva agreed that it was a "gun that kind of looks like a policeman's gun."  This testimony was read at trial.  The ballistics evidence established that the cartridges found at the scene were from a .40 caliber handgun, and there was testimony that .40 caliber Glock handguns are common police weapons.  As the weapon DaSilva described could have been the weapon used in the shooting, there was no error in the admission of her testimony as evidence of means.[11]

b.  Opening statement.  Both defendants argue that the prosecutor impermissibly referenced potentially inadmissible

---

[11] Monteiro also argues that the gun DaSilva testified she saw at the hotel was black, although, during the shooting, another witness saw a brown gun.  This argument misconstrues the trial testimony.  No witness at trial identified the color of the weapon, although one witness testified that he saw "a brown hand with a gun in it."  In any event, we have rejected the argument that testimony of gun possession is inadmissible where a witness testified that the gun used in the commission of the crime was a different color.  See Commonwealth v. Otsuki, 411 Mass. 218, 235 n.12 (1991).

evidence in her opening statement, creating a substantial likelihood of a miscarriage of justice. There was no error.

The opening statement referred to DaSilva's anticipated testimony. The defendants argue that because the prosecutor knew that DaSilva might recant her incriminating statements on the stand, and that, if she were to do so, the judge might rule against any subsequent motion to admit her grand jury testimony, the prosecutor should have avoided making any reference to testimony she planned to elicit from DaSilva.

A prosecutor's opening statement may reference anything that he or she reasonably believes in good faith will be proved by evidence introduced during the course of the trial, even if he or she is not certain the necessary evidence will be admitted. See, e.g., Commonwealth v. Fazio, 375 Mass. 451, 455-456 (1978) (opening statement previewed testimony from witness whom prosecutor knew to be asserting Fifth Amendment right). Specifically, the fact that an adverse evidentiary ruling might later bar introduction of certain evidence does not preclude a prosecutor from mentioning it in his or her opening. See id. at 456-457.

Here, the prosecutor had a reasonable and good faith belief that she would produce the evidence that she set out in her opening statement. While informed that DaSilva had claimed at the Martin hearing that her statements to the grand jury had

been false, and had suggested she would refuse to testify, the prosecutor learned from DaSilva's counsel, immediately before opening statements, that DaSilva did, in fact, intend to testify.[12]  The prosecutor then gave an opening statement that included the evidence she expected to introduce through DaSilva. The mere possibility that DaSilva might recant on the stand, and that the Commonwealth might not be permitted to introduce inconsistent grand jury if she did so, did not bar the prosecutor from previewing the testimony she anticipated.  See Fazio, 375 Mass. at 456.

c.  Immunized witness testimony.  DePina maintains that the jury instructions concerning DaSilva's immunized testimony, to which there was no objection, were error that created a substantial likelihood of a miscarriage of justice.  We discern no error in the absence of the instructions DePina now requests.

Although the judge did instruct the jury, in accordance with the model jury instructions, see Massachusetts Superior Court Criminal Practice Jury Instructions § 7.8, at 7-37 (Mass. Cont. Legal Educ. 2d ed. 2013), that they "may take [a grant of immunity] into consideration in assessing the witness's credibility," DePina contends that the judge also should have informed the jury explicitly that, by statute, they could not

_____

[12] Indeed, before receiving confirmation that DaSilva intended to testify, the prosecutor had prepared an alternative opening statement, omitting any mention of DaSilva.

find the defendants guilty solely on the basis of DaSilva's immunized testimony. See G. L. c. 233, § 20I; Commonwealth v. Vacher, 469 Mass. 425, 440 (2014).

We do not require any specific instructions regarding the testimony of an immunized witness, and we have rejected a requirement that a judge instruct explicitly that a conviction cannot be based solely on the testimony of such a witness. See, e.g., Commonwealth v. Brousseau, 421 Mass. 647, 652-654 (1996). Rather, the focus is on whether the charge as a whole adequately explains the issue. See id. at 654. Here, the judge informed the jury that they could consider the effect of immunity on DaSilva's credibility, and counsel for both sides argued extensively in closing about the credibility of the immunized witness. See id., and cases cited (noting importance of counsels' argument on issue of credibility when evaluating adequacy of jury instructions). The instructions were more than sufficient to inform the jury of the dangers of exclusive reliance on immunized witness testimony.

d. Denial of motion to sever. Prior to trial, and again at the close of the Commonwealth's evidence, the defendants moved to sever the trials, arguing that the defenses would be mutually antagonistic, and that failure to sever would prevent them from receiving a fair trial. Monteiro claims that the

judge abused his discretion by denying this motion.  We do not agree.

A decision to sever a trial generally is left to the sound discretion of the trial judge.  See, e.g., Commonwealth v. McAffee, 430 Mass. 483, 485 (1999).  Severance on the ground of mutually antagonistic defenses is required only where "the acceptance of one party's defense will preclude the acquittal of the other."  See Commonwealth v. Ramos, 470 Mass. 740, 749 (2015), quoting Commonwealth v. Moran, 387 Mass. 644, 657 (1982).  It is not enough that a joint trial may cause a defendant to pursue a different strategy, or that a defendant would stand a better chance of acquittal if tried alone.  See McAfee, supra at 486.  Where some defenses overlap, while others are independent, a joint trial is appropriate.  See Ramos, supra.

We discern no abuse of discretion in the judge's decision not to sever the defendants' trials.  Each defendant sought to undermine the credibility of the Commonwealth's key witness, while also advancing his own separate grounds of defense.  See id.  Here, as in Ramos, supra, the defenses were, if anything, overlapping, and certainly not so mutually antagonistic as to require severance.[13]

---

[13] On appeal, DePina argues that Monteiro's inculpatory statements were inadmissible against DePina, and were so

e.  Third-party culprit evidence.  Monteiro moved prior to
trial to introduce various pieces of third-party culprit
evidence.  The motion judge, who was also the trial judge,
denied the motion in part, not allowing the introduction of
evidence that the victim had been assaulted by an unknown
assailant shortly before the shooting, and that the victim was
planning to sell heroin to a particular individual on the day he
was killed.  Monteiro argues that the partial denial was an
abuse of discretion requiring a new trial.

In order to be admissible, third-party culprit evidence
"must have a rational tendency to prove the issue the defense
raises, and the evidence cannot be too remote or speculative."
Commonwealth v. Silva-Santiago, 453 Mass. 782, 801 (2009),
quoting Commonwealth v. Rosa, 422 Mass. 18, 22 (1996).  Where
the third-party culprit evidence is hearsay not within an
exception, there must be "substantial connecting links" between

_____

prejudicial that their introduction required that he be tried
separately.  See Bruton v. United States, 391 U.S. 123, 126
(1968).  Evidence which does not expressly and directly
implicate a defendant, however, does not implicate the Bruton
rule.  See Commonwealth v. Rivera, 464 Mass. 56, 69-70, cert.
denied, 133 S. Ct. 2828 (2013), and cases cited; Commonwealth v.
Pontes, 402 Mass. 311, 314-315 (1988).  Nor does evidence
properly admitted under the joint venture exception to the
hearsay rule.  See Commonwealth v. Braley, 449 Mass. 316, 319
(2007).  See also Pontes, supra at 314, quoting Bruton, supra at
128 n.3 (statements must be "clearly inadmissible" against
codefendant).  Because the statement concerning being jumped
implicated DePina only by inference, and the statement about
Johnson Court properly was admissible against him, neither gave
rise to a Bruton error.

the evidence and the offense (citation omitted). Silva-Santiago, supra.

Monteiro sought to elicit hearsay testimony that, at some point shortly before the victim was killed, an unidentified attacker had thrown a brick at the victim, in order to suggest that others might have wished the victim harm. The judge concluded that the evidence of an attack by an unknown assailant, at an unspecified time, was "not relevant." We discern no error. The proposed evidence lacked sufficient "connecting links" and would have served to confuse the jury. See Silva-Santiago, 453 Mass. at 801. See also Commonwealth v. O'Brien, 432 Mass. 578, 588-589 (2000) (evidence of hostility and fear between victim and alleged third-party culprit not admissible because it lacked sufficient connecting links).

Monteiro also sought to elicit testimony from a man who purportedly planned to buy heroin from the victim on the day of his death. Monteiro argued that evidence that the victim was a drug dealer suggested that people other than the defendants, such as rival drug dealers, might have had motive to kill him. The judge correctly concluded that such an inference, in the absence of any further evidence, amounted to no more than pure speculation. See Silva-Santiago, supra.

f. Ballistics evidence. Monteiro contends that testimony by the Commonwealth's ballistics expert caused a substantial

likelihood of a miscarriage of justice by improperly appealing to the jury's emotions and impermissibly suggesting that Monteiro was a person of bad character who had been involved in other shootings. More specifically, the expert testified that, during the course of the investigation, he compared ballistics from the cartridges found at Johnson Court to those found at other crime scenes in Brockton. The ballistics examiner noted these comparisons and testified that he had been unable to find any matches.

Because a defendant may suggest to the jury that inadequate investigation led police to miss evidence which would have implicated others, or would exculpate the defendant, see Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980), the Commonwealth may present evidence to rebut such a contention, even if it otherwise would be inadmissible. See, e.g., Commonwealth v. Avila, 454 Mass. 744, 753 (2009). In anticipation of such a defense, the Commonwealth elicited, without objection, a brief statement from an investigating officer of the result of ballistics tests. There was no error.[14]

g. Fear of retaliation. Monteiro argues that by eliciting testimony from Dossanto as to his fear of retaliation for

---

[14] Even if the admission had been error, the testimony did not create a substantial likelihood of a miscarriage of justice. Contrary to Monteiro's suggestion, the expert's testimony did not appeal to the jury's emotions, nor did it imply that the defendants had been involved in other crimes.

cooperating with the Commonwealth, the prosecutor improperly vouched for his credibility, creating a substantial likelihood of a miscarriage of justice.

Toward the end of the direct examination of Dossanto, the prosecutor asked him, without objection, why he had not come forward earlier and why he was not "honest" when police initially approached him.  This was not impermissible vouching.  Vouching occurs when an attorney indicates his or her personal belief in the credibility of a witness, or indicates personal knowledge beyond the evidence.  See Commonwealth v. Rosario, 460 Mass. 181, 190 (2011).  "[T]estimony regarding a witness's fear of retaliation," on the other hand, "generally is admissible in the discretion of the [trial] judge, for the purpose of establishing witness credibility."  Id. at 193.  See Commonwealth v. Auguste, 418 Mass. 643, 647 (1994), and cases cited.  Here, the prosecutor did not suggest any personal knowledge or reliance on facts not in evidence.  Rather, she allowed the witness to explain his earlier reticence, and his lack of initial honesty, in order to respond to an obvious avenue of attack on the witness's credibility by defense counsel.  See Rosario, supra; Auguste, supra at 647-648.

h.  Relief pursuant to G. L. c. 278, § 33E.  We have carefully reviewed the entire record, pursuant to our duty under G. L. c. 278, § 33E.  We are satisfied that the verdicts were

not contrary to law, against the weight of the evidence, or otherwise unjust.  We therefore decline to exercise our authority under G. L. c. 278, § 33E, to set aside the verdicts or to reduce the degree of guilt.

<u>Judgments affirmed</u>.