NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-795                                        Appeals Court

COMMONWEALTH  vs.  CARLOS VIZCAINO.

No. 22-P-795.

Bristol.     October 5, 2023. – April 11, 2024.

Present:  Wolohojian, Desmond, & Sacks, JJ.


Assault and Battery by Means of a Dangerous Weapon.  Assault by
    Means of a Dangerous Weapon.  Evidence, Testimony before
    grand jury.  Practice, Criminal, Transcript of testimony
    before grand jury, Instructions to jury.  Words,
    "Coercion."



Indictments found and returned in the Superior Court
Department on June 27, 2019, and April 1, 2021.

The cases were tried before Renee P. Dupuis, J.


Tara B. Ganguly for the defendant.
Nathaniel W. Kennedy, Assistant District Attorney, for the
Commonwealth.


DESMOND, J.  Following a jury trial in the Bristol Superior

Court, the defendant was convicted of assault and battery on a

family or household member, G. L. c. 265, § 13M (a); assault by

means of a dangerous weapon, G. L. c. 265, § 15B (b); and

assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b). He was acquitted of two counts of rape, G. L. c. 265, § 22 (b). He appeals from his convictions, arguing that the trial judge improperly admitted the victim's grand jury testimony in evidence pursuant to Commonwealth v. Daye, 393 Mass. 55, 73-75 (1984). See Mass. G. Evid. § 801(d)(1)(A) (2023). We affirm.

Background. We summarize the evidence adduced at trial, reserving certain details for our discussion of the alleged errors. See Commonwealth v. Maldonado, 466 Mass. 742, 744, cert. denied, 572 U.S. 1125 (2014). The defendant and the victim began a relationship in 2014 or 2015, after the defendant paid the victim for sex. The victim testified that their relationship was not "normal," and, although she could not describe what she meant by "normal," she said that she and the defendant were intimate and did not date other people. The victim also testified that she continued "working as a prostitute" during her relationship with the defendant, and that the two sometimes worked together. When they did, the victim gave the defendant the money that she had earned. The defendant provided the victim with a cell phone and paid the bill associated with it, in part with the money that she gave him. The victim gave the defendant access to her cell phone records and social media accounts because she "had no choice" and, if

she did not, the defendant would become angry and hit or "mentally damage[]" her.

In the early morning of May 31, 2018, at around 2 or 3 A.M., the victim, who was sleeping at a friend's house, woke up and looked at her cell phone. Upon seeing text messages from the defendant, the victim went outside and joined him in his car.[1] After giving each other a kiss and saying hello, the victim again fell asleep. When she awoke the car was in a location that was unknown to her, and the defendant was punching her in the face. As the victim asked, "What did I do?" the defendant repeatedly struck her, responding, "You know what you did." The defendant eventually told the victim to perform oral sex on him, and she complied. After some time, the defendant climbed on top of the victim and initiated vaginal intercourse. Around that time, the defendant took out a kitchen knife and pressed it against the victim's throat, causing her pain. Although she tried to move, the defendant pressed the knife more deeply into her skin whenever she did so.

After some time, a vehicle entered the parking lot, startling the defendant, and allowing the victim to escape from the defendant's vehicle. Naked, the victim walked towards an

---

[1] The victim had expected the defendant to pick her up earlier in the day, but he did not, so she fell asleep.

employee of a nearby methadone clinic, who had arrived in the vehicle that had entered the parking lot. The victim asked the employee to help her, stating, "I've been raped[,] and I've been held at knifepoint." The employee, along with one of his coworkers, covered the victim with a comforter and called 911. While the victim was with the helpful bystanders, the defendant rolled down the window of his vehicle and repeatedly asked, "Babe, why are you doing this to me?" He drove away when she did not respond.

During her testimony before the grand jury, the victim described the incident as a controlling and violent sexual encounter with the defendant. When asked if she had wanted to have sex with the defendant, the victim responded, "No." Prior to trial, however, the defendant filed a motion for reconsideration of bail, arguing that the victim had spoken to his investigator and recanted a portion of her prior testimony. During a hearing on the defendant's motion, the victim testified that she believed the defense investigator wanted to hear "what actually happened" and that the prosecutor did not "care about the truth." Contrary to her grand jury testimony, the victim

now maintained that the defendant had not forced her to have sex with him during the assault.[2]

In response to the victim's recantation, the Commonwealth indicated that it intended to file a motion in limine to introduce the victim's grand jury testimony substantively pursuant to Daye.[3]  The judge discussed the Daye requirements with both parties, and ultimately ruled that portions of the victim's grand jury testimony could be read in evidence if the victim's trial testimony was consistent with her recantation.  After the victim testified at trial, contrary to her grand jury testimony, that she had "asked [the defendant] to have sex with [her]" during the assault "because that's the only way [she] could calm him down," an employee of the district attorney's office, consistent with the judge's ruling, was permitted to read a portion of the victim's grand jury testimony in evidence.[4]

---

[2] At the hearing on the motion for reconsideration of bail, a victim witness advocate testified that the victim was "very fearful" that the defendant would "somehow . . . be released" from custody and "find out where she was."  The victim moved to a new address in order to prevent the defendant from learning where she lived.

[3] The Commonwealth first declared its intention to introduce this motion during a pretrial hearing, immediately after the judge denied the Commonwealth's motion to introduce the grand jury testimony based on a theory of forfeiture by wrongdoing.

[4] The judge, in consultation with both parties, painstakingly reviewed the victim's trial and grand jury testimonies, and was careful to admit only the portions of the

The defendant objected and the judge overruled the objection while informing the defendant that his rights were preserved.

Discussion. As stated above, on appeal, the defendant challenges the judge's substantive admission of portions of the victim's grand jury testimony in evidence. He argues that the judge erred by admitting the victim's grand jury testimony without making the required finding under Daye that the victim's testimony was not coerced by the Commonwealth. He contends that the judge's instruction to the jury to disregard the victim's grand jury testimony if they believed the testimony had been coerced, shows that the judge was not sufficiently familiar with the Daye requirements, and casts doubt on whether she implicitly found that the testimony met the criteria for admission. He further argues that the record does not support a finding that the victim's grand jury testimony was not coerced. We disagree.

"[P]rior inconsistent statements made under oath before a grand jury [can] be admitted substantively at trial, 'provided the witness can be effectively cross-examined as to the accuracy of the statement, the statement was not coerced and was more than a mere confirmation or denial of an allegation by the interrogator, and other evidence tending to prove the issue is presented.'" Maldonado, 466 Mass. at 755, quoting Daye, 393

grand jury testimony that satisfied the requirements of Daye, discussed infra.

Mass. at 75. "Although an express finding is, of course, to be preferred, it is not essential where the evidence supports the judge's implicit finding that [the witness] had not been coerced." Commonwealth v. DePina, 476 Mass. 614, 621 (2017). "Where the defendant's objections were preserved, we review for prejudicial error." Commonwealth v. Brum, 492 Mass. 581, 587 (2023). "A trial judge's findings on these issues are entitled to substantial deference and are 'conclusive as long as . . . [they are] supported by the evidence.'" DePina, supra, quoting Maldonado, supra at 756.

Here, the judge's extensive discussions with trial counsel, together with her instructions to the jury, plainly reveal that she was "aware of the Daye requirements," and we therefore conclude that she implicitly made the requisite finding regarding coercion even though she did not do so explicitly. Maldonado, 466 Mass. at 756 (awareness of requirements supports inference that judge made implicit finding under Daye). See DePina, 476 Mass. at 621-622 (admission of testimony "implies a factual finding that it was not coerced"). The judge and counsel repeatedly discussed the Daye requirements prior to and during the trial, with a particular focus on the coercion element. Moreover, the judge instructed the jury, inter alia,

> "You may consider a statement made under oath at a grand jury proceeding that was not merely a yes or no answer to a leading question for its truth. That is, you may believe

the present testimony, you may believe the prior statement, or you may believe both or neither.  The decision of what to believe is entirely up to you.  However, because the evidence in this case raises issues of whether the witness was pressured to testify before the grand jury in the matter [sic] that she did, before you can consider grand jury testimony substantively, that is for its truth, you must find that the grand jury testimony was not the result of pressure or coercive tactics."

These instructions support the conclusion that the judge properly understood that coerced testimony may not be admitted for substantive use pursuant to Daye.[5]

We are further unpersuaded by the defendant's argument that the record is inadequate to support the judge's implicit finding that the victim's grand jury testimony was not coerced.  The defendant asserts that because the victim recanted her grand jury testimony and later asserted that she did not have an opportunity to speak freely in front of the grand jury, the judge was precluded from making such a finding.  The judge, however, was free to discredit the victim's claim of coercion.  See Maldonado, 466 Mass. at 754, 756 (judge not required to find

_____

[5] The defendant did not object to the jury instruction with respect to coercion.  As the judge's preliminary finding of coercion pursuant to Daye was "conclusive," DePina, 476 Mass. at 621, it was unnecessary for the jury to make their own independent finding of coercion.  See Commonwealth v. Bright, 463 Mass. 421, 428-429 (2012); Mass. G. Evid. § 104(a) & note (2023).  Assuming without deciding that this instruction was in error, we discern no substantial risk of a miscarriage of justice.  See Brum, 492 Mass. at 587.  Indeed, this instruction could only have benefited the defendant because it provided a second opportunity for inculpatory evidence to be excluded from the jury's consideration.

testimony was coerced even though witness "testified at trial that he was 'forced' to say what he had said to the grand jury and was 'tricked' by the prosecutor"). See also DePina, 476 Mass. at 622 (judge not required to credit uncontroverted claim of police coercion). To the extent that the victim provided conflicting testimony with respect to whether she was coerced, the judge was permitted to weigh the competing evidence in arriving at her conclusion.[6] See Commonwealth v. Sineiro, 432 Mass. 735, 742 (2000) ("A trial judge has considerable discretion in deciding whether inconsistency exists between a witness's testimony at trial and prior testimony or statements of the witness").

In contrast to the defendant's assertion, the evidence amply supported the judge's implicit finding that the victim's grand jury testimony was not coerced. During her grand jury testimony, in response to open-ended questions from the prosecutor, the victim described the defendant waking her by punching her in the face with a closed fist.[7] In further

---

[6] In particular, we note the ample evidence before the judge that the victim was afraid the defendant would find and harm her sometime in the future. See Maldonado, 466 Mass. at 755-756.

[7] On occasion in the admitted grand jury testimony, the victim answered "yes" or "no" in response to leading questions. However, these questions were limited to clarification of the victim's narrative testimony. See Commonwealth v. Pierre, 486

response to the open-ended questions, the victim described how the defendant had inserted his penis into her vagina while pressing a knife deeply into her neck when she tried to move. When asked whether "[intercourse] [was] something [she] had wanted to do," she responded, "No." This testimony was consistent with the statement she made to the bystander who rendered her assistance immediately following the attack, asserting that she had been raped. Having thoroughly reviewed the record, we discern no evidence, other than the victim's pretrial assertion, which the judge was not required to credit, of any coercion imposed upon the victim by the prosecutor.[8] In light of these facts, there was no error in the judge's finding that the victim's grand jury testimony was not coerced, and in her allowance in evidence of the contested testimony for substantive purposes.[9] See Brum, 492 Mass. at 588.

Conclusion. Although an express finding of a lack of coercion is preferred, see DePina, 476 Mass. at 621, here we

_____

Mass. 418, 429 (2020) ("fairly open-ended" questions satisfy Daye requirements).

[8] The defendant agreed at oral argument that the transcript of the grand jury testimony does not reflect any form of coercion or compulsion.

[9] Having concluded that there was no error in the admission of the victim's grand jury testimony, we need not address the defendant's arguments with respect to the prejudice flowing from that admission.

conclude that, because the record plainly reveals that the judge was fully aware of the Daye requirements, she implicitly made the requisite findings prior to admitting the victim's grand jury testimony.  We further conclude that the record is sufficient to support those findings and, discerning no error, we affirm the judgments.

So ordered.